# UNITED STATES DISTRICT COURT
# FOR THE MARYLAND

| | |
|---|---|
| JACQUELYN CHIAO, CHRISTINE KIM, ADRIANA PARVANOVA and DANIELLE SIMMONS, | ) ) ) ) |
| *Plaintiffs* | ) ) |
| vs. | ) ) |
| UNITED AIRLINES, INC., a Delaware Corporation, | ) ) ) |
| *Defendant* | ) ) ) |

Case No. 1:25-cv-00687-ELH

**FIRST AMENDED COMPLAINT**
<u>**JURY TRIAL DEMANDED**</u>

**Hon. Ellen Lipton Hollander**

Plaintiffs Jacquelyn Chiao, Christine Kim, Adriana Parvanova and Danielle Simmons hereby bring this action against United Airlines for race discrimination in violation of 42 U.S.C. § 1981, as well as for negligence/breach of duty, and intentional infliction of emotional distress. By their attorneys, Motley Rice LLC, they allege the following facts:

## INTRODUCTION

1. On August 29, 2024, United Airlines (herein referred to as "United") engaged in blatant and egregious race discrimination, negligence/breach of duty, and intentional infliction of emotional distress when it ejected Plaintiffs Chiao, Kim, Parvanova and Simmons, from United Airlines Flight 1627 from Las Vegas, NV to Dulles, VA, during a layover at Baltimore/Washington Thurgood Marshall International Airport (BWI), without any valid reason, based solely upon the race of one of the Plaintiffs.

2. Due to poor weather, United Flight 1627 from Las Vegas, NV to Dulles, VA was diverted to BWI.

1

3. While the plane was allowed to land, the pilot informed the passengers that there wasn't a gate available for the aircraft. The Plaintiffs were told to stay on plane for 5 hours until aircraft personnel allowed them to disembark.

4. Once the Plaintiffs and the rest of the passengers disembarked, they were required to sit by the gate for an hour before they were allowed to return to the aircraft. When Plaintiff Kim attempted to board the aircraft, she was prevented from doing so by aircraft personnel, purportedly at the behest of the pilot.

5. After expressing confusion and requesting more information, the pilot informed Plaintiff Chiao that Plaintiff Kim was being denied access because it had been reported to him that an Asian woman, who they assumed to be her, had pushed a flight attendant.

6. Plaintiff Kim informed the pilot that this was impossible as she did not have any direct interaction with the flight attendants at that point in her journey.

7. Plaintiff Chiao, who had boarded the aircraft prior to Plaintiff Kim, also stated that this incident did not happen.

8. Plaintiff Chiao, who did interact with one of the flight attendants, informed the pilot that a flight attendant was rude to her when questioned about her treatment of her colleague John Doe.

9. Plaintiffs were denied boarding on the flight and were separated from their luggage, which remained on the aircraft as it headed to IAD.

10. All of the Plaintiffs were escorted out of the airport by armed police officers at the behest of United personnel.

11. United's discriminatory treatment, as well as the collateral effect, towards the Plaintiffs is not an isolated incident. In fact, United has a documented history of subjecting Black, Brown, Asian and other passengers of color to bigotry and discriminatory treatment.[1]

12. The treatment that Plaintiffs experienced is, upon information and belief, part of United's pattern and practice of discrimination against passengers of color.

13. The Defendant's discriminatory acts towards Plaintiff Kim, were the direct and proximate cause of the negligence/breach of duty, and intentional infliction of emotional distress endured by the remaining Plaintiffs.

14. In this lawsuit, Plaintiffs seek declaratory relief, just compensation for their pain and suffering, a punitive damage award sufficient to deter United from discriminating against Asian or other passengers of color in the future, and an award of attorney's fees and costs.

## JURISDICTION AND VENUE

15. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves a federal question under 42 U.S.C. § 1981. Declaratory and equitable relief is authorized by 28 U.S.C. §§ 2201, 2202, and 1343.

---

[1] http://www.aclusocal.org/en/news/aclu-sues-four-major-airlines-discrimination; *ACLU Sues Four Major Airlines For Discrimination,* http://www.aclu.org/press-releases/federal-judge-ca-rebuffs-united-airlines-plea-dismiss-aclu-discrimination-case; *Federal Judge in CA Rebuffs United Airline's Plea To Dismiss ACLU Discrimination Case,* http://abcnews.go.com/ABCNews/african-woman-removed-united-flight-white-passenger-complained/story?id=55135645; *African Woman Removed From United Flight After White Passenger Complained She Smelled 'Pungent': Lawsuit*

16. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred in the Eastern District of Virginia.

17. This Court has personal jurisdiction over United because it regularly conducts business in this judicial district.

## PARTIES

18. Plaintiff Jacquelyn Chiao, who is Asian, resides in Springfield, VA. She is a Real Estate professional.

19. Plaintiff Christine Kim, who is Asian, resides in Springfield, VA. She is a Real Estate professional.

20. Plaintiff Adriana Parvanova, who is Caucasian, resides in Alexandria, VA. She is a Real Estate professional.

21. Plaintiff Danielle Simmons, who is Caucasian, resides in Dumfries, VA. She is a Real Estate professional.

22. Defendant United Airlines, Inc., is a United States-based airline incorporated in Delaware with headquarters in Chicago, Illinois. It regularly and systematically conducts business in the District of Maryland, and the actions complained of occurred in this District.

## FACTS

23. Plaintiffs are co-workers and lived and worked in and around Dulles, Virginia.

24. In August of 2024, Plaintiffs traveled to a real estate convention in Las Vegas, Nevada for work.

25. All four Plaintiffs' purchased airline tickets to fly on August 26, 2024, from Washington, DC to Las Vegas, Nevada.

26. Accompanying the Plaintiffs, but not participating in this lawsuit was John Doe, a colleague.

27. The initial flight to Las Vegas operated smoothly and was uneventful for all of the named Plaintiffs and their colleague.

28. However, the return flight on August 29, 2024, United Flight 1627, was diverted after arriving at Washington Dulles International Airport (IAD) due to bad weather.

29. After circling for 45 minutes to an hour, the flight was re-routed to Baltimore/Washington International Thurgood Marshall Airport (BWI).

30. After landing at 5:30pm, Plaintiffs, as well as the other passengers, were required to remain on aircraft for five hours before being allowed to disembark the aircraft in violation of Federal Aviation Regulations 14 C.F.R. 259.

31. During this five hour wait, John Doe who was sitting in seat 8E, at some point during the fourth hour, began sweating profusely and experiencing chest pain, causing him to press the call button for a flight attendant. Danielle Simmons, one of the Plaintiffs, was sitting next to him in 8D and witnessed his difficulties.

32. Standing to the right of Plaintiff Danielle Simmons, in the aisle, were Plaintiffs Jacquelyn Chiao, Adriana Parvanova and an unidentified male passenger; all of whom were witnesses to Mr. Doe's condition.

33. When the flight attendant arrived, she rudely asked him if he was having a heart attack. Mr. Doe, who is a colleague of the Plaintiffs, indicated that he had no idea if he was having a heart attack.

34. The flight attendant left and came back with a phone and belatedly offered an oxygen mask. Mr. Doe, who was concerned about its cleanliness due to prior use and reuse, declined to wear the mask.

35. The flight attendant rather rudely continued to question Mr. Doe about his condition, minimizing the potential seriousness of his condition by stating "Oh, okay. So, you're just having a panic attack." A determination she was patently unqualified to make.

36. Plaintiff Chiao, who was present for this interrogation, asked the flight attendant why she was being so rude and to show a little compassion to a passenger who was clearly in distress.

37. The flight attendant smirked, gave a snarky response, witnessed by more than one of the passengers, and abruptly walked away.

38. It should be noted that during this interaction, standing in between the flight attendant and Plaintiff. Chiao, were Plaintiff Parvanova and an unidentified male passenger.

39. At no point did this flight attendant make an announcement to attempt to ascertain the presence of medical professionals on board the aircraft who could assess Mr. Doe.

40. An hour later, after a total of more than five hours, all of the passengers were allowed to deboard the plane onto the tarmac.

41. At no point were the Plaintiffs, or any of the passengers, offered the opportunity to deplane during this more than five hour wait.

42. This length of time on the tarmac, without the offer to deplane, violates federal law which requires airlines to "provide a passenger on a flight experiencing a tarmac delay at a U.S. airport the opportunity to deplane before the tarmac delay exceeds three hours in duration . . .".[2]

43. It should be noted that for the entirety of the five hours on the tarmac, Plaintiff Kim was sitting in seat 15F, away from the other Plaintiffs, reading a book on her Kindle.

44. Plaintiffs sat outside an airline gate, in close proximity to the aircraft, as they waited an additional hour before the process to re-board began.

45. Plaintiff Jacquelyn Chiao and John Doe, who were in group 2, were the first among those involved in the incident to board the plane. This occurred without incident.

46. Plaintiffs Christine Kim, Danielle Simmons, and Andriana Parvanova were in groups 3-5.

47. As Plaintiff Kim was re-boarding the plane, she was pulled aside by the gate agent and informed that the captain decided not to allow her back on the flight.

48. When Plaintiff Kim asked the reason why she could not re-board, she was told there was no other reason other than the captain was the deciding factor and she was not allowed back on the plane.

49. Plaintiff Kim let the other Plaintiffs know she would not be allowed to re-board the plane.

50. Plaintiffs Simmons and Parvanova began asking the agents why they were refusing to allow Plaintiff Kim aboard the aircraft.

---

[2] 14 C.F.R. § 259.4 (2025).

51. Seeing that Plaintiff Kim was in tears as a result of the maltreatment from the United employees, Plaintiffs Simmons and Parvanova stepped out of line to support her while they attempted to gain clarification as to why she was being treated differently.

52. Plaintiff Simmons then proceeded to call Plaintiff Chiao, who had already boarded, and informed her of what had occurred.

53. Plaintiff Chiao, the only Asian Plaintiff who had an interaction with the flight attendant, disembarked the plane, as did the pilot.

54. When asked why Plaintiff Kim was being denied access to the aircraft, the pilot informed them that a flight attendant reported that she had been physically assaulted by a female Asian passenger.

55. Neither Plaintiff Chiao nor Kim, both of whom are Asian (Plaintiff Chiao is Taiwanese and Plaintiff Kim is Korean) made any physical contact with any of the airline employees, as can be attested to by the other Plaintiffs as well as the passengers on the aircraft.

56. Subsequently, all four Plaintiffs were wrongfully denied boarding to the aircraft and were separated from their luggage, which remained on the aircraft as it travelled to IAD.

57. Ultimately, all of the Plaintiffs were escorted out of the airport by armed police officers at the behest of the United employees.

58. At no point did any of the Plaintiffs voluntarily decide not to board the plane. All of the Plaintiffs were denied access to the aircraft. Plaintiff Kim was denied

because of her race while Plaintiffs Chiao, Parvanova, and Simmons were denied access in retaliation for their attempts to understand and resolve the situation.

59. Another passenger, a traveling United Airlines employee, whose name and contact information was volunteered to the Plaintiffs by the employee, witnessed the events set forth in this complaint.

60. The United employee's identity is not disclosed in this Complaint to protect this United employee from retaliation, workplace backlash, or other harm to employment, but will be disclosed in discovery once a protective order is entered in this case.

## FIRST CAUSE OF ACTION
*42 U.S.C. § 1981*

61. All prior allegations not inconsistent with this cause of action are re-alleged and incorporated by reference herein.

62. 42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts…as is enjoyed by white citizens…." 42 U.S.C. § 1981(a). Under the statute, the phrase "make and enforce contracts" includes "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

63. When Plaintiff Kim contracted with United for passage on Flight 1627, she had a right to equal treatment—a right which United violated. Plaintiff Kim was subjected to discriminatory behavior, as well as substantially deficient

performance, benefits, and privileges in relation to the terms and conditions of her contract with United, purely due to her race and ethnicity.

64. As a direct and proximate result of United's intentional discrimination in violation of Section 1981, Plaintiff Kim suffered, and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of damages.

65. United's unlawful and discriminatory actions constitute malicious, willful, and wanton violations of Section 1981, for which Plaintiff Kim is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
*INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

66. All prior allegations not inconsistent with this cause of action are re-alleged and incorporated by reference herein.

67. Defendants caused the Plaintiffs great mental and emotional anguish.

68. Traveling via aircraft is a time of vulnerability for a for any as they are required to put their trust in the airline to ensure that their journey goes as expected and that they are safe from harm through the journey.

69. Defendant's conduct towards the Plaintiffs was extreme and outrageous, which intentionally or recklessly caused severe emotional distress to all the Plaintiffs.

70. Although Plaintiff Kim bore the brunt of the Defendant's maltreatment, her co-workers and fellow Plaintiffs suffered immensely seeing the extreme manner in which she was being treated, by the Defendant, solely because of her race.

71. Further, all of the Plaintiffs were forced to endure the embarrassment of being denied access to their aircraft, separated from their luggage, and forcibly escorted out of the airport by armed police officers after being falsely accused of causing a

disturbance and wrongfully denied boarding. Plaintiffs were paraded by the officers in front of other passengers and airport employees.

72. Traveling in and of itself can be stressful, but for the Plaintiffs, this trip became outrageous due to the extent of the Defendant's persistent inflammatory behavior which resulted in Plaintiffs' severe emotional distress.

73. Defendant's actions, and that of their agents, were intentional and/or reckless and their actions were outrageous, extreme, beyond all bounds of decency and intolerable.

74. Plaintiff requests compensation for the emotional pain and suffering she has endured, as well as all other compensation the court and jury deem just and proper.

### THIRD CAUSE OF ACTION
*NEGLIGENCE/BREACH OF DUTY*

75. All prior allegations not inconsistent with this cause of action are re-alleged and incorporated by reference herein.

76. Defendant had a duty to protect the Plaintiffs from injury, mental, emotional or physical, while they were in the Defendant's care.

77. The racial discrimination and maltreatment endured by Plaintiff Kim at the hands of Defendant and its agents breached this duty.

78. The emotional and mental anguish endured by all of the Plaintiffs due to the racial discrimination of Plaintiff Kim, falsely accusing them of causing a disturbance, denying them access to their aircraft, and their forcible removal from the airport by armed officers further breached this duty.

79. The Defendant also had a duty to transport all of the Plaintiffs to their final destination as long as the complied with the carrier's contract of carriage.

80. Although the Plaintiffs complied with the contract of carriage, the Defendant breached its duty by arbitrarily, and without cause, denying them access to the aircraft as well as calling for armed law enforcement personnel to parade the Plaintiffs out of the airport as if they were criminals after falsely accusing them of causing a disturbance, in addition to the false allegation of assault by Plaintiffs Chiao and Kim.

81. The behavior and actions of the Defendant's agents caused the Plaintiffs a great deal of hardship, embarrassment and suffering, causing their mental and emotional suffering.

82. Plaintiffs request compensation for the mental and emotional pain and suffering they suffered and continue to endure. They also seek reimbursement for any bills and expenses they have incurred, as well as all other compensation the court and jury deem just and proper.

### **FOURTH CAUSE OF ACTION**
*DEFAMATION/SLANDER/LIBEL*

83. All prior allegations not inconsistent with this cause of action are re-alleged and incorporated by reference herein.

84. By reporting to law enforcement that Plaintiff Kim and/or Chiao assaulted the Defendant's agent, along with falsely claiming that the other Plaintiffs were causing a disturbance, detaining the Plaintiffs in plain view of the public, as well as having the Plaintiffs forcibly removed from the airport, in plain view of the

public, the Defendant and its agents, through words and/or writing, published certain statements concerning the Plaintiffs.

85. Levying an accusation of assault or any criminal act tends to the impeach the honesty, integrity, virtue, character and reputation of the accused.

86. The statements and communications published by the Defendant, as well as its agents and/or employees, concerning Plaintiffs, had a defamatory meaning.

87. The statements and communications published by the Defendant, as well as by its agents and/or employees, were categorically false as neither Plaintiff Kim or Chiao committed acts of assault, nor had any of the Plaintiffs caused a disturbance.

88. As a direct and proximate result of the Defendant's, as well as its agents and/or employees, defamation, slander, and libel, Plaintiffs have sustained legally presumed damages, including, but not limited to, embarrassment, humiliation, mental suffering, special damages, actual damages, and consequential damages.

89. Plaintiffs are informed and believe they are entitled to judgment against the Defendant for special damages, actual damages, consequential damages, and punitive damages.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully seek:

1. A declaratory judgment that the actions, conduct and practices of Defendant complained of herein violate 42 U.S.C. § 1981;

2. An award of compensatory damages in an amount to be determined at trial to compensate each Plaintiff for the harm they endured, to include damages for fear, humiliation, embarrassment, mental pain, suffering, and inconvenience;

3. An award of punitive damages in an amount to be determined at trial that would punish Defendant for its malicious, willful, wanton, callous, and reckless conduct and effectively deter Defendant from engaging in similar conduct;

4. An award of prejudgment interest on all amounts due;

5. An award of reasonable attorneys' fees and costs.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury for all issues of fact and damages stated herein.

Dated: June 12, 2025

                                             Respectfully submitted

                                             */s/ John E. Herrick*
                                             John E. Herrick, Esq.
                                             MOTLEY RICE LLC
                                             28 Bridgeside Blvd.
                                             Mt. Pleasant, SC 29464
                                             Telephone: 843-216-9000
                                             Facsimile: 843-216-9450
                                             *Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on June 12, 2025, a copy of the foregoing First Amended Complaint was filed and served via the Court's CM/ECF system on all counsel of record.

                                                               */s/ John E. Herrick*_____
                                                               John E. Herrick