UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| JACQUELYN CHIAO, CHRISTINE KIM, ADRIANA PARVANOVA and DANIELLE SIMMONS,<br><br>*Plaintiffs*<br>vs.<br><br>UNITED AIRLINES, INC., a Delaware Corporation,<br><br>*Defendant* | Case No.: 1:25-cv-00687 |

## PLAINTIFFS' RESPONSE TO DEFENDANT UNITED AIRLINES, INC.'S MOTION TO DISMISS

Defendant United Airlines, Inc., (hereinafter "United") pursuant to Rule 12(b)(6), moved to dismiss Count II and Count III of the Plaintiffs' claims from their First Amended Complaint, asserting that Plaintiffs have not alleged the necessary facts to support their claims of Intentional Infliction of Emotional Distress and Negligence. Further, the Defendant asserts that even if the Plaintiffs allege the requisite facts to support Intentional Infliction of Emotional Distress and Negligence, these two counts should still be dismissed because they are preempted by the Airline Deregulation Act of 1978 (hereinafter "ADA"). Defendant's motion, as it pertains to the claim of negligence, is without merit and should be denied. However, the Plaintiffs hereby withdraw their claim of intentional infliction of emotional distress.

### INTRODUCTION AND RELEVANT FACTUAL ALLEGATIONS

This Court should dismiss the Defendant's Motion to Dismiss due to their patently erroneous claims that the Plaintiffs have failed to sufficiently plead their count of negligence.

1

In their First Amended Complaint, Plaintiffs Christine Kim, Jacquelyn Chiao, Adriana Parvanova, and Danielle Simmons, in some detail, described their shared traumatic experiences at the hands of the Defendant's employees. Without re-alleging each and every factual allegation in the Plaintiffs' First Amended Complaint, the following transpired on August 29th, 2024.

On August 29th, 2024, the flight on which the Plaintiffs were travelling, United flight 1627, was diverted from its original destination to Baltimore/Washington International Thurgood Marshall Airport ("BWI") due to inclement weather. Prior to landing at BWI, a co-worker of the Plaintiffs, John Doe, began to experience an undetermined medical emergency and pressed his call button for assistance. When a flight attendant arrived, Mr. Doe, who was sweating profusely and experiencing chest pain, was being supported by Plaintiffs Chiao, Simmons, Parvanova, as well as a presently unidentified male passenger.

The flight attendant, rather than being helpful, was discourteous to Mr. Doe, minimized the medical episode he was experiencing, and, despite lacking a medical degree, diagnosed him as experiencing a panic attack. When asked to show compassion, rather than impoliteness to Mr. Doe, the flight attendant, after again replying rudely, abruptly stormed off, away from Plaintiffs Chiao, Parvanova, Simmons, Mr. Doe, and the unidentified passenger without providing additional assistance. Plaintiff Kim, who was in her seat reading on her Kindle, was not present for this event nor did she interact with the flight attendant during the journey.

After landing at BWI, the Plaintiffs, as well as the other passengers, were forced to wait on the tarmac for about five hours before being allowed to disembark the aircraft, in violation of Federal Aviation Regulation 14. C.F.R. 259. During this illegal, extended, period of time, the Plaintiffs had no interaction with the flight attendant mentioned above. When the Plaintiffs attempted to reboard the plan, Plaintiff Kim was denied access to the aircraft. Despite being

2

supported by Plaintiffs Parvanova and Simmons, the Defendant's employees refused to explain why Plaintiff Kim could not board the plane. Plaintiff Simmons contacted Plaintiff Chiao, who had already boarded the aircraft. Plaintiff Chiao arrived to provide support to the other plaintiffs, with the pilot disembarking behind her. When Plaintiff Chiao asked the pilot why Plaintiff Kim was being denied access to the aircraft, he informed her that the decision was made because a flight claimed that an Asian passenger had physically assaulted her and had insisted that Plaintiff Kim was the culprit. Upon hearing this, Plaintiff Kim breaks down in tears and utmost confusion. Similarly, the other Plaintiffs were in vary states of shock, confusion, and pain.

Despite their attempts to inform the Defendant's employees that this event never occurred, not only were they ignored, but they were also all denied access to the aircraft. Further, the Defendant's employees called the police, falsely claimed that the Plaintiffs were "beligerant [sic] and not allowing people to board the flight". ECF No. 36-2. Plaintiffs were detained and subsequently removed from the airport by armed police officers. These facts are certainly more than sufficient to support the claim of negligence.

## **LEGAL STANDARD**

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint", which is "measured by whether it meets the standards for a pleading stated in . . . Rule 12(b)(6). *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). When the legal sufficiency of the complaint is being attacked, the claims within the complaint must possess sufficient factual information, when accepted as true, are facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

While a Rule 12(b)(6) motion tests the legal sufficiency of a complaint, the Federal Rules of Civil Procedure "require only a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted). Therefore, in order for a claim to survive dismissal for failure to state a claim, the plaintiffs must "allege facts sufficient to state all the elements of [their] claim[s]." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir.2003).

## ARGUMENT

The Court should deny the Defendant's motion to dismiss for failure to state a claim, as it relates to Count III, because, when taken as true, the facts alleged in the Plaintiffs' First Amended Complaint are sufficient to support a plausible claim of negligence. Furthermore, negligence is not preempted by the Aviation Deregulation Act ("ADA") because, as pleaded, bears too tenuous a relationship to the Defendant's services as an aircraft carrier. As such, the Defendant's motion to dismiss should be denied as it relates to the count of ngelgience.

**A. Sufficient Facts are Alleged in the First Amended Complaint to Support Claim of Negligence.**

In Maryland a claim of negligence is comprised of four elements which the plaintiff must satisfy: (1) defendant had a duty to protect the plaintiff from injury; (2) the defendant breached that duty; (3) the plaintiff suffered actual loss or injury; and (4) the lost or injury proximately resulted from the defendant's breach of duty. See *Todd v. Mass Transit Admin.*, 373 Md. 149, 155

4

(2003) (internal quotations and citations omitted). However, negligence in Maryland is relative and, as such, must be determined on the facts of the particular case and is typically seen as a "question of fact to be determined the jury." *See Fowler v. Smith*, 240 Md. 240, 246 (1965). In actions where a plaintiff has asserted the claim of negligence based on an emotional injury, the plaintiff may only recover damages when the emotional injury is accompanied by physical impact, harm, or objectionably determinable. *See Coleman v. Immaculate Heart of Mary School*, No. CCB-11-02917, 2012 WL 75323, at *1 (D. Md. Jan. 9, 2012). However, physical injury, as defined by Maryland courts, differs from the common definition of the term. In Maryland, "physical injury" can be established in the following manner:

> We think it clear that *Bowman* provides that the requisite "physical injury" resulting from emotional distress may be proved in one of four ways. It appears that these alternatives were formulated with the overall purpose in mind of requiring objective evidence to guard against feigned claims. The first three categories pertain to manifestations of a physical injury through evidence of an external condition or by symptoms of a pathological or physiological state. [In the fourth category] [p]roof of a physical injury is also permitted by evidence indicative of a "mental state. . .".

*Beynon v. Montgomery Cablevision Ltd. P'ship*, 351 Md. 460, 502, 718 A.2d 1161, 1182 (1998) (internal quotations and citations omitted).

The Beynon court found that nervous disturbances may indicate suffering of the body or mind and that plaintiffs "may recover for these injuries to the extent that they can objectively demonstrate their existence." See *Benyon* at 502 (citing *Faya v. Almaraz*, 329 Md. At 458-459, 620 A.2d 327, 338 (1993)).

The Defendant, as the airline carrier has a duty to safely transport the Plaintiffs pursuant to their validly purchased tickets and the of carriage. The Defendant breached this duty, when, rather than transporting the Plaintiffs safely, they harmed them by racial discriminating against Plaintiff Kim and levying false criminal allegations against all four of the Plaintiffs which led them being detained and removed the airport. Defendant, in its motion, claims that the Plaintiffs have failed to plausibly allege that they suffered physical or objectively determinable injuries. See Def's Mot. Dismiss 16-17. This is patently false, as detailed below.

**1. Plaintiffs have Suffered Objectively Determinable Injuries**

On August 29th, 2024, the Plaintiffs experienced what a vast minority of people who have flown in this country have experienced. All of the Plaintiffs were denied boarding, falsely accused of crimes, one of whom was selected for this treatment solely because of the color of her skin, detained by police, and forcibly removed from the airport like they were criminals. None of the Plaintiffs had previously interacted with police in a nature such as this, and certainly not under fabricated circumstances. This incident left Plaintiffs feeling frightful for their futures due to the damage a false criminal accusation can do to one's reputation, particularly as realtors. Further, the Plaintiffs were left shaking, in tears, embarrassed, confusion, exhausted, and feeling completely hopeless after, in full view of those in the airport, as if they were violent offenders unfit for air travel. Plaintiff Kim's emotional state was so severe during this incident, she couldn't even speak. Not one of the Plaintiffs are able to think about this incident, or enter an airport, without all of these feelings rushing to the forefront. This horrific incident led to sleepless nights and feelings of worthlessness, emotions caused, not by the actions of the Plaintiffs, but by the malevolence and dishonesty of the Defendant's employees.

The court in *Vance* found objectively determinable injuries, arguably, with less. There the court ruled that loss of sleep, public embarrassment, difficulty communicating, periods of crying sobbing, and change of appearance were sufficient after a woman learned that she had not, as she believed, been married to her husband for the last twenty years. *See Vance v. Vance*, 286 Md. 490, 494, 408 A.2d 728, 730 (1979). Similarly, in *New Summit Assocs.*, the court found that a Plaintiff who discovered peepholes in her bathroom mirror suffered an emotional injury that was objectively determinable even though the extent of her suffering to be "nervous shock, resulting in nausea, diarrhea, and an inability to sleep, was therefore a compensable injury." *New Summit Assocs. Ltd. P'ship v. Nistle*, 73 Md. App. 351, 362-363 (1987). Here, the Plaintiffs endured considerably more and were detained by police as a result. The harm suffered by the Plaintiffs is the direct result of the Defendant's breach of duty.

Consequently, there are sufficient factual allegations to support the Plaintiffs' claim of negligence, and the Court should deny the Defendant's motion to dismiss at it pertains to the failure to demonstrate an objectively determinable injury.

### B.  The Plaintiffs' Negligence Claim is not Preempted by the ADA

**1.  The ADA and its Preemption Provision**

Congress enacted The Airline Deregulation Act in 1978 with the goal to "encourage, develop, and attain an air transportation system that relied on competitive market forces to determine quality, variety, and price of air services[.]"[1] This marked a stark change in how the federal government viewed aviation transportation as well as how closely it regulated the industry. Before the enactment of the ADA, the federal government heavily regulated airline routes, fares, and

---

[1] *Ann K. Wooster, Annotation, Construction and Application of § 105 Airline Deregulation Act (49 U.S.C.A. § 4173), Pertaining to Preemption of Authority Over Prices, Routes, and Services.*

7

mergers through the Civil Aeronautics Board.[2] While this level of heightened regulation allowed the airlines to prosper, it had deleterious effect on the operational efficiency and kept ticket fares high.[3] The implementation of the ADA allowed for the creation of new airlines, increased competition in the market, which lowered prices, and made air travel more accessible to the everyday American.[4]

> As it relates to the case at hand, the ADA contains a preemption provision which provides:
>
>> [A] State, political subdivision of a State, or political authority of at least 2 states may not enact or enforce a law, regulation, or other provision having the force of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

49 U.S.C. § 41713(b)(1).

While the United States Supreme Court interpreted the inclusion of this provision "to ensure that states would not undo federal deregulation with regulation of their own []", there were differing opinions among the lower courts on how to define the term "service". *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 280 (2014) (holding ADA preempted state common-law claims relating to airline's frequent flyer program, a service) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992) (holding that ADA preempted state attorneys general attempts to enforce state deceptive practice law against airlines' advertising, which related to airline fares, a service)). Courts, such as those in the Ninth Circuit, have taken a narrower approach by defining "service" in "the public utility sense – i.e. the provision of air transportation to and from various markets at

---

[2] *See* Mark M. Walker, Deregulation of the U.S. Airline Industry, EBSCO (2023), https://www.ebsco.com/research-starters/history/deregulation-us-airline-industry.
[3] *Airline Deregulation: When Everything Changed*, SMITHSONIAN (Dec. 17, 2021), https://airandspace.si.edu/stories/editorial/airline-deregulation-when-everything-changed.
[4] *Id*.

various times" and excluding "the pushing of beverage carts, keeping the aisles clear of stumbling blocks, the safe handling of luggage, assistance to passengers in need, or like functions." *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1266 (9th Cir.1998).

Here, in the Fourth Circuit, binding precedent regarding is still being established, outside of *the Smith v. Comair*, Inc. case. As in a few other circuits, the Fourth Circuit adopted in *Smith* a broader definition of "service", holding that "boarding procedures" are a service provided by an airline and, as such, Smith's claims, insofar as they were related to Comair's boarding procedures, were preempted by the ADA. *Smith v. Comair, Inc.*, 134 F.3d 254, 295 (4th Cir. 1998) (citing *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336, 339 (5th Cir. 1995). However, the court carves out an exception in *Smith* which is applicable here. The Court, in analyzing the nexus between services and the ADA, determined that, "to the extent that his claims are based on conduct distinct from Comair's determination not to grant permission to board, his false imprisonment and intentional infliction of emotional distress claims are not preempted. *Id*. at 259. To illustrate this point, the court provides the example of a passenger who is held by an airline carrier without a safety or security justification. The court concluded that, in this example, a claim of false imprisonment would not be preempted because, although transportation (or the refusal to do so) is an airline service, the absence of a justification means that is not related to a legitimate airline service and not preempted by the ADA. *See Id*.

It should be noted that, when citing this portion of *Smith*, the Defendant mischaracterized the words of the court by asserting "a claim does not relate to a route or service *only* where an airline acts without a safety justification." Def.'s Mot. Dismiss 19, ECF No. 36-1 (emphasis added). Without equivocation, the court in *Smith* states, "[s]uits stemming from outrageous conduct on the part of an airline toward a passenger will not be preempted under the ADA if the conduct is too

9

tenuously related or is unnecessary to an airline's services." *Smith*, 134 F.3d at 259. This expands the scope beyond that of claims without a safety or security justification to any conduct that is too tenuously related to any of an airline's services. This language is applicable here.

**2. The Conduct Underlying Plaintiffs' Negligence Claim is not Related to an Airline Service.**

The conduct that is the crux of the negligence claim asserted by the Plaintiffs is racial discrimination employed by one of the Defendant's flight attendants. Racial discrimination of it's passengers is certainly not related to any service provided by the Defendant, rather such conduct is explicitly prohibited by federal law; "[a]n air carrier or foreign air carrier may not subject a person in air transportation to discrimination on the basis of race, color, national origin, religion, sex, or ancestry." 49 U.S. Code § 40127.

Here, the employees of the Defendant falsely accused Plaintiff Kim, whom it had a duty to transport safely, of physical assault. Further, the Defendant exacerbated the situation by refusing to allow her to board the aircraft based on this false allegation, in an instance where there were no corroborating witnesses to support the allegation. When Plaintiff Kim's colleagues went to support her, the Defendant, again, continued to make false allegations, this time against Plaintiffs Chiao, Parvanova, and Simmons. The police report included by the Defendant as an exhibit to their motion denotes statements from the Defendant that the passengers were "being beligerant[sic] and not allowing people to board the flight" as well as "they are yelling at United Airlines Supervisor". ECF No. 36-2. The Defendant made these statements to Maryland police yet, because they were unable, did not provide witnesses, video, or any other documentation to support their salacious allegations against the Plaintiffs, all in an effort to diminish, embarrass, and justify barring their access to the aircraft. There is support in the case law lambasting this sort of conduct.

10

In *Chrissafis*, the court determined that when an airline's employee provided false information regarding a passenger to law enforcement, that conduct was not covered by the contractual agreement between the airline and the passenger, nor does it reasonably further an airline's provision of services. As a result, such conduct is not preempted by the ADA. *See Chrissafis v. Continental Airlines, Inc.*, 940 F.Supp. 1292 (N.D. Ill. 1996) (holding that ADA did not preempt passenger's false arrest and false imprisonment claims because employees' allegedly false accusations were not services, but claims based solely on refusal to transport were preempted). Similarly, here, to the extent that the Plaintiffs' state law claim is related to racial discrimination and the false allegations made by the Defendant's employees, which led to law enforcement intervention, it is not preempted by the ADA. *See Smith*, 134 F.3d at 259 (citing *Chrissafis*, 940 F.Supp. at 1298-99).

Despite the Defendant's heavy reliance on *Smith* to justify its motion, that case is distinguishable from the one before the court. The Defendant certainly cannot, or should not, assert that making false allegations against the Plaintiffs, or racially discriminating against one of the Plaintiffs, bears any relationship to their boarding procedures or is in furtherance of any of its services. In *Smith*, the passenger was denied boarding because of the failure to adhere to one of the airline's boarding requirements, i.e. providing photo identification prior to boarding. Such a denial creates a clear relationship to an airline's transport services and boarding procedures.

However, here, the same cannot be said to justify the outrageous manner in which the Defendant treated the Plaintiffs. The Defendant's conduct can certainly be described as "intolerable in that it offends against the generally accepted standards of decency and morality." *Id*. at 260 (citing *Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 2–3 (Ky.1990)). Unlike in *Humana*, where the Smith court highlights behavior described as "cold, callous and lacking sensitivity" as

insufficient to constitute outrageous because Comair "did not commit a tort", multiple torts could be alleged by the Plaintiffs here; false information to police and hate crime just to name two. By their very nature, crimes are violations of rules and morals society holds dear. Few are more violative than the denigration of an individual based on a physical characteristic and falsely alleging the commission of a crime to law enforcement.

Although the Defendant argues that the Plaintiffs created a disturbance, which the facts do not support (a police report is not a factual document), and that created safety and security concerns, Def.'s Mot. Dismiss 19-20, racial discrimination cannot be the basis for a safety justification. *See Wellons v. Nw. Airlines, Inc.*, 165 F.3d 493, 496 (6th Cir. 1999) (explaining that no arguable connection exists between racial discrimination and airline safety, competition, or efficiency); See also *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 168 (4th Cir. 2016) (where the court found that the district court erred in treating an officer's incident report as factual rather than the officer's impressions). Additionally, a claim of negligence based on racial discrimination and false allegation to the police has no impact on the Defendant's ability to compete with other airline carriers because no airline carrier in the country has policies or procedures that would allow for the legal denial of passengers based on their race or for fabricated reasons.

As such, the Plaintiffs' First Amended Complaint provides sufficient factual allegations, when taken as true, are not precluded by the ADA's preemption provision. The Plaintiffs' claim of negligence, which arises from racially discriminatory conduct, as well as false allegations, bears too tenuous a relationship to the Defendant's services, and has no impact on the Defendant's ability to compete, maintain safety, or efficiency.

## **CONCLUSION**

The Court should deny the Defendant's Motion to Dismiss because the First Amended Complaint alleges sufficient facts to show that the ADA does not preempt Plaintiff's state law claim of negligence. As stated *supra*, the Plaintiffs withdraw their claim of intentional infliction of emotional distress.

Dated: July 31, 2025                                **MOTLEY RICE LLC**

                                                  By: *s/ James R. Brauchle*
                                                      John E. Herrick, Esq.
                                                      James R. Brauchle (*Admitted PHV*)
                                                      Olutola Familoni (*Admitted PHV*)
                                                      28 Bridgeside Blvd.
                                                      Mt. Pleasant, SC 29464
                                                      Telephone: 843-216-9000
                                                      Facsimile: 843-216-9450

                                                      *Attorneys for Plaintiffs*
                                                      *Jacquelyn Chiao, Christine Kim,*
                                                   *Adriana Parvanova and Danielle Simmons*

**CERTIFICATE OF SERVICE**

I do hereby certify that on this 31st day of July, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all attorneys of record.

                                      **MOTLEY RICE LLC**

                                      By: *s/ James R. Brauchle*
                                      John E. Herrick, Esq.
                                      James R. Brauchle (*Admitted PHV*)
                                      Olutola Familoni (*Admitted PHV*)
                                      28 Bridgeside Blvd.
                                      Mt. Pleasant, SC 29464
                                      Telephone: 843-216-9000
                                      Facsimile: 843-216-9450
                                      *Attorneys for Plaintiffs*
                                      *Jacquelyn Chiao, Christine Kim,*
                                      *Adriana Parvanova and Danielle Simmons*